**LATHAM&WATKINS**LLP                    quinn emanuel trial lawyers | new york

July 21, 2026

**Via ECF**

The Honorable Valerie Figueredo
United States District Court Magistrate Judge

Re: *Fanatics, LLC, et al. v. Lincoln International LLC*, No. 1:26-cv-00543-LTS-VF (S.D.N.Y)

Dear Judge Figueredo:

We write on behalf of Fanatics to advise the Court that despite Fanatics' best efforts to reach a compromise on its motion to compel ("Motion"), Fanatics and Lincoln U.S.[1] have been unable to reach agreement because of one open item. Accordingly, Fanatics respectfully requests that the Court issue a ruling on the Motion.

## I.    The Court's Proposal at the July 1 Hearing

As Fanatics explained in its Motion and at the July 1 hearing, overwhelming evidence establishes that Lincoln U.S. has the practical ability to obtain responsive documents from Lincoln Italy. ECF 32, 68. Lincoln U.S.'s complaints about "burden" only confirmed this reality, as the Court aptly recognized: "[W]hy offer this argument about burdens and costs … if [Lincoln U.S.] couldn't get the documents?" ECF 68 at 50:11–13.

Nonetheless, in an effort to address Lincoln U.S.'s burden concerns, the Court proposed a sensible compromise at the hearing: Lincoln U.S. and Lincoln Italy would accept the subpoena and voluntarily produce responsive documents—including documents from Lincoln Italy—if Fanatics agreed to cover the costs of production. *Id.* at 68:4–12. If Lincoln was not amenable to that agreement, the Court would rule on Fanatics' Motion. *Id.*

Fanatics immediately agreed to that proposal, but Lincoln U.S. asked for additional time to consider it and consult with Lincoln Italy. The Court ordered Lincoln U.S. to inform the Court by July 7, 2026 whether it would agree to the proposed compromise. *Id.* at 70:11 18.

## II.    Lincoln Agrees In Substance But Raises Vague Data Privacy Concerns

The next day (July 2), Lincoln U.S. contacted Fanatics to discuss the "scope and specifics" of Fanatics' commitment to cover Lincoln's production costs. Exhibit 1 at 30. On a call the following day (July 3), counsel for Lincoln U.S. represented that she had not yet spoken with Lincoln Italy, but nevertheless initiated discussions concerning the date range and custodians. *Id.* at 26–30. The parties tentatively agreed to a date range for Lincoln's review. *Id.*

On July 7—the original deadline—Lincoln U.S. informed Fanatics that "Lincoln US and Lincoln Italy are willing to collect, review and produce documents responsive to the subpoena," subject to Fanatics' agreement not only to cover the cost of production, but also to indemnify "Lincoln US, Lincoln Italy, and any Lincoln affiliate for any potential breaches of foreign data

---

[1]    Capitalized terms herein have the meaning assigned in Fanatics' Motion.

privacy laws." *Id.* at 24–25.  If Fanatics was unwilling to provide such indemnity, then Lincoln U.S. requested an additional week to consult with Italian counsel to determine whether it would require such indemnity as part of an agreement.  Exhibit 2 at 4.

Although Lincoln did not request indemnification at the July 1 hearing or on the July 3 call, and while indemnification was beyond the scope of the Court's original compromise proposal, Fanatics agreed to the requested one-week extension in an effort to avoid further burdening the Court.  *Id.*

The following week, however, Lincoln still would not commit to an agreement, even though the parties had already agreed to the terms of the Court's proposed compromise—*i.e.*, Lincoln would produce responsive documents if Fanatics covered the production costs.  Rather, Lincoln U.S. informed Fanatics that it was not willing to proceed with production absent the new indemnification term, or at least some unspecified assurance that Fanatics was not seeking significant amounts of protected information.  Exhibit 1 at 17–18.  At Lincoln's request, Fanatics shared proposed search terms and custodians and agreed to yet another extension of Lincoln's deadline—this time until July 20.  *Id.* at 10–11.  In the meantime, Lincoln U.S. agreed to consider Fanatics' proposal that Lincoln Italy produce responsive documents to Lincoln U.S.—as it unquestionably can do in the ordinary course—after which Lincoln U.S. would provide the documents to Fanatics pursuant to an order from this Court.  *Id.* at 9.

On July 20—almost three weeks after the hearing—Lincoln U.S. was still unwilling to drop its new indemnification demand.  Lincoln U.S. informed Fanatics that Lincoln's Italian counsel was "continuing to review the proposal" and "at this stage, they do not believe it fully addresses all concerns, but are still evaluating and will follow up once their review is complete." *Id.* at 5.[2]

### III.    The Court Should Grant Fanatics' Motion

The Court offered Lincoln U.S. a sensible compromise that would have addressed any burden concerns and obviated the need for a ruling.  By July 7, the parties had agreed to the terms of that compromise.  But for the past two weeks, Lincoln has refused to commit to a final agreement based on vague data privacy concerns that it did not preserve, did not mention at the hearing, and has never substantiated.  Accordingly, the Court should grant Fanatics' Motion.

***First***, there is no serious dispute that Lincoln U.S. has the practical ability to obtain responsive documents from Lincoln Italy.  In addition to the overwhelming evidence that Fanatics presented in its Motion and at the July 1 hearing, the events of recent weeks have confirmed Lincoln U.S.'s practical ability beyond any doubt.  Most notably, Lincoln U.S. *offered to produce responsive documents from Lincoln Italy* if Fanatics agreed to provide blanket indemnification for any breaches of data privacy laws.  Exhibit 2 at 4.

---

[2]  On July 20, one of Lincoln U.S.'s lawyers, Ms. Tiradentes, advised that she had a death in her family and proposed a call on July 23 or July 24 to continue discussions.  Fanatics advised that, with depositions commencing on July 22, it could not afford to defer resolution any longer, and that it intended to seek a ruling from the Court.  Fanatics nonetheless agreed to another extension, through July 21 at 5pm ET, as a professional courtesy, and offered to speak to Ms. Tiradentes' colleague.  Unfortunately, the parties were unable to resolve the open issue by that time.  Fanatics expresses sincere condolences to Ms. Tiradentes and her family.

***Second***, Lincoln's data-privacy objections are waived, meritless, and obstructionist. As an initial matter, Lincoln U.S. waived these objections, both by failing to raise them in a timely fashion, *see* ECF 32 at 10, 17; ECF 49 at 2–3, 10, and by failing to carry its burden of substantiating them. Lincoln U.S. bears the "burden of demonstrating that [the GDPR] actually bars the production or testimony at issue." *Wultz v. Bank of China Ltd.*, 942 F. Supp. 2d 452, 460 (S.D.N.Y. 2013) (internal quotation marks omitted). Far from carrying that burden, Lincoln U.S. conceded *even after the July 1 hearing* that it had not yet consulted Italian counsel on that question. *See* Exhibit 2 at 4. Even today, Lincoln U.S. cannot say whether the GDPR actually prevents it from producing documents. To the contrary, as the Court heard at the July 1, 2026 hearing, the bulk of Lincoln's transactions are cross-border, and Lincoln entities freely engage in international data sharing. ECF 68 at 21:23–22:2. It is not credible that the GDPR somehow prevents Lincoln from providing documents to Fanatics in response to a lawful subpoena when Lincoln has been freely sharing the same information across its own international offices.

## IV.    Conclusion

Fanatics respectfully requests that the Court grant its Motion and order Lincoln U.S. to produce, without further delay, responsive documents that it has the practical ability to obtain.

Very truly yours,

/s/ Michael B. Carlinsky
Michael B. Carlinsky

/s/ Lawrence E. Buterman
Lawrence E. Buterman