UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE: SUBPOENA TO LINCOLN
INTERNATIONAL LLC

In connection with:                                    Case No.  1:26-CV-00543-LTS
*Panini America, Inc. v. Fanatics, Inc. et al.,* 23-
cv-9714 (S.D.N.Y.)

FANATICS, LLC, FANATICS
COLLECTIBLES INTERMEDIATE HOLDCO,
INC., FANATICS SPV, LLC, and FANATICS
HOLDINGS, INC.

    Petitioners,

  v.

LINCOLN INTERNATIONAL LLC,

    Respondent.

## DECLARATION OF ANDREA TERRAGNI

  I, Andrea Terragni, hereby declare, pursuant to 28 U.S.C. § 1746, that the following is true and correct:

  1.  I, Andrea Terragni, am Partner at Studio Legale De Berti Jacchia Franchini Forlani, admitted to practice law in Italy, with 25 years of experience in Intellectual Property, Tech and Data Protection law. I submit this declaration in support of the letter of Lincoln International LLC ("Lincoln U.S.") to the Honorable Valerie Figueredo, United States Magistrate Judge, in the above-captioned action. Unless otherwise indicated, I have personal knowledge of the matters stated herein.

  2.  I was retained by Lincoln International S.r.l. ("Lincoln Italy") to advise on the legal requirements and risks under the General Data Protection Regulation (EU) 2016/679 (the "GDPR") and Italian data protection law applicable to the potential transfer of Lincoln Italy's documents to Lincoln U.S. for production in this litigation.

  3.  Under Article 48 of the GDPR, a judgment or decision of a third-country court or tribunal requiring the transfer or disclosure of personal data may only be recognized or enforced within the European Union if based on an applicable international agreement, such as a Mutual Legal Assistance Treaty ("MLAT"), in force between the requesting third country and the Member

State concerned. No such treaty between Italy and the United States covers private civil litigation of this nature. Accordingly, any production by Lincoln Italy of documents containing personal data must be structured as a voluntary disclosure in compliance with the GDPR's independent requirements.

4.      Notably, even where data processed in the EU were transferred or disclosed in response to a request from a third country authority under any MLAT, such disclosure would constitute a transfer within the meaning of Chapter V of the GDPR: there must be a legal basis for the processing under Article 6 GDPR and a valid ground for transfer under Chapter V of the GDPR. And, as reaffirmed by the European Data Protection Board – *i.e.*, the Board representing the European data protection authorities – a request from a foreign authority does not in itself constitute a legal basis for the processing or a ground for the transfer. Therefore, any such voluntary disclosure must satisfy a two-step test. First, there must be a valid legal basis for the underlying processing of personal data under Articles 5 and 6 of the GDPR, which requires that all the individuals whose personal data is contained in the relevant documentation has been fully informed about the possible use of their data in the context of a judicial proceeding for legal defence by Lincoln. Second, because the personal data would be transferred outside the European Economic Area to the United States, the transfer must independently comply with Chapter V of the GDPR (Articles 44–49), which imposes additional safeguards on cross-border data transfers.

5.      With respect to the M&A documentation prepared in connection with Lincoln Italy's engagement by Panini – in addition to ensure that the above conditions have been met with specific regard to the disclosure by Lincoln Italy in the pending proceeding between Fanatics and Lincoln, the disclosure should meet the minimization principle, which includes that robust anonymization of all personal data—including, for example, employee compensation data contained in due diligence materials—is required before any disclosure. Mere redaction of names may not suffice according to the GDPR and under the restrictive position of the EU data protection authorities (including the EDPB and the Italian Data Protection Authority - the "Garante per la protezione dei dati personali," or the "Garante"), which has posed the threshold for anonymization to require that re-identification of data subjects be rendered practically impossible, with no reasonable means or legal ability to re-identify the individuals concerned.

6.      The disclosure of internal emails raises a heightened level of risk. The Garante has consistently held that employee emails—even those sent from corporate email accounts—are personal communications protected by the right to privacy and confidentiality under Italian law. A blanket export and disclosure of all internal mailboxes of selected employees within a given timeframe would not comply with local restrictions. Any extraction of responsive email communications should be keyword-based, limited to named custodians who were directly involved in the relevant engagement, the timeframe of the relevant emails should be restricted as much as possible, and ideally carried out with the active cooperation of each individual employee whose mailbox is searched.

7.      In the event of non-compliance with the foregoing requirements, Lincoln Italy could face administrative fines of up to €20 million or 4% of the consolidated worldwide annual turnover of the Lincoln International corporate group, whichever is higher, under Article 83 of the GDPR. Affected employees, and former employees, or third parties whose personal data are disclosed in violation of the GDPR may bring civil claims for damages before Italian courts. The

statute of limitations for administrative fines is five years, and for civil claims, up to ten years. There is also a significant reputational risk to Lincoln Italy, as an investment bank, if an enforcement action was issued by the Garante and made public or civil order was issued by an Italian Court.

8.    In the event of non-compliance with the foregoing requirements, Lincoln U.S. could also be exposed to legal consequences for the transfer of personal data.

9.    I understand that Fanatics has identified three potential mechanisms for transferring the data from Lincoln Italy to Lincoln U.S.: (1) self-certification under the EU-U.S. Data Privacy Framework; (2) binding corporate rules; or (3) standard contractual clauses. Even if these options were available to Lincoln Italy, Lincoln Italy must first have a valid legal basis for the underlying processing of the personal data. As set forth above, no such legal basis is readily available in this context. Accordingly, even if one of these transfer mechanisms were implemented, Lincoln Italy would remain exposed to potential liability. Moreover, the applicability and sufficiency of each of these transfer mechanisms would itself require further evaluation, as each carries its own legal prerequisites and limitations under the GDPR, and the determination of whether any of them is viable in these specific circumstances has not yet been completed. Given the onerous nature of the mitigation steps described above—including robust anonymization of personal data in M&A documentation and keyword-based, custodian-limited, individually-cooperative email extraction—compliance with these requirements within the timeframe and scope of Fanatics' proposed discovery may not be practically achievable. Lincoln Italy believes that an international mechanism, such as the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters (the "Hague Evidence Convention"), presents a more workable path for accessing responsive documents held in Italy in a manner that respects applicable data protection obligations.

10.    From an Italian law perspective, nothing in the GDPR or Italian data protection law prohibits the parties from entering into a contractual indemnity arrangement governed by U.S. law that would require Fanatics to bear the costs of any fines, civil damages, or related costs in the event Lincoln Italy or Lincoln U.S. is found liable as a result of transferring the data.

11.    Pursuing the Hague Convention process would substantially reduce the GDPR risks described above. Lincoln Italy's position that it will not oppose a properly served request through the Hague Convention process would further facilitate compliance.

12.    I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on July 22, 2026, in Milan, Italy.

Andrea Terragni
Studio Legale De Berti Jacchia Franchini Forlani