LATHAM&WATKINS LLP                                    quinn emanuel  trial lawyers | new york

July 24, 2026

**Via ECF**

The Honorable Valerie Figueredo
United States District Court Magistrate Judge

Re: *Fanatics, LLC, et al. v. Lincoln International LLC*, No. 1:26-cv-00543-LTS-VF (S.D.N.Y.)

Dear Judge Figueredo:

We write on behalf of Fanatics in response to Lincoln U.S.'s[1] July 22, 2026 letter.  Were there any persisting doubt that Lincoln U.S. has been deploying gamesmanship to delay any substantive response to Fanatics' subpoena, Lincoln's latest submission amounts to a confession.  Because Lincoln U.S. somehow failed, throughout three weeks of preceding discussions, to identify any concrete GDPR concerns, Fanatics had no opportunity to address them, even as Fanatics consented to three extensions to facilitate Lincoln U.S.'s evaluation of these purported concerns.  It then turned out, however, that Lincoln U.S. was somehow prepared, just one day after Fanatics filed its July 21, 2026 letter, suddenly to unveil all the particulars of its hitherto-unstated concerns via an attorney affidavit.

It is painfully apparent, in other words, that Lincoln U.S. was never genuinely interested in reaching a negotiated solution—all it hoped to accomplish through its serial extensions was to maximize delay.  And that is not the only revelation from Lincoln U.S.'s latest submission: now, after months of denying the same, Lincoln U.S. readily admits that its affiliates engage in "routine cross-border operations" involving "ordinary intra-group communications."  ECF 71 at 2.

Thanks to Lincoln U.S.'s dilatory approach, depositions are now proceeding in the related cases, with a gauntlet of vital deponents scheduled in the coming weeks, while Fanatics is no closer to obtaining the critical discovery controlled by Lincoln U.S. that Fanatics requested by subpoena nine months ago.  Simply stated, there is no time left for Fanatics or the Court to dignify newly minted GDPR-based arguments that were waived many months ago and are meritless in any event.

## I.    Lincoln's Gamesmanship And Delay

It is Lincoln U.S. that bears the "burden of demonstrating that [the GDPR] actually bars the production or testimony at issue." *Wultz v. Bank of China Ltd.*, 942 F. Supp. 2d 452, 460 (S.D.N.Y. 2013) (internal quotation marks omitted).  Yet Lincoln U.S. made no attempt to substantiate its concerns and carry that burden in its November 2025 responses and objections— which were served nearly a month after Lincoln U.S.'s subpoena compliance deadline and contained only a one-sentence GDPR objection.  *See* ECF 34-2 at 2.  Nor did Lincoln U.S. attempt to carry this burden in its February 2026 opposition to Fanatics' Motion, which merely made a generalized assertion that the Court has "recognized the burden and costs associated with [GDPR] compliance."  ECF 42 at 15.  Nor did Lincoln U.S. carry this burden at the Court's July 1, 2026 hearing, where it failed to even raise its GDPR objection.  *See* ECF 68.

---

[1]   Capitalized terms herein have the meaning assigned in Fanatics' July 21, 2026 letter (ECF 70).

Instead, Lincoln U.S. founded its opposition on the false claim that it had no practical ability to obtain relevant documents from Lincoln Italy. In advancing that premise, Lincoln U.S. represented to the Court that, "in the ordinary course, there is no free flow of information back and forth" between its international affiliates, *id.* at 35:15-17, stressing that "[t]hese are not branches," and that "[e]ach one of these entities is a separately formed entity," *id.* at 36:24-25. *See also* ECF 42 at 9-10 (contending that Fanatics was "unable to show any evidence of a free flow of information between entities" and wrongly "asks the Court to conclude that Lincoln U.S. had access to Lincoln Italy's documents 'in the ordinary course of business.'").

By so representing, Lincoln U.S. was trying to blink reality. Only after the Court saw through that did Lincoln U.S. try to tell the opposite story. Per Lincoln U.S.'s latest letter, it turns out that Lincoln International engages in "routine cross-border operations" involving "ordinary intra-group communications." ECF 71 at 2. Lincoln U.S. has thus pivoted to advancing its GDPR objection while giving the lie to what it previously submitted to this Court. It suffices to note that Lincoln U.S. remains nowhere close to carrying its burden under *Wultz*. Indeed, Lincoln U.S.'s inability to get its story straight has precluded it from making any coherent case, much less carrying its burden. Far from "demonstrating that [the GDPR] actually bars" production, 942 F. Supp. 2d at 460, Lincoln U.S. winds up asserting (not proving) at most that there is no "readily available" justification under the GDPR, ECF 72 at 3, a position that Lincoln U.S. admittedly reached with "no meaningful . . . evaluation," ECF 71 at 2. Even if Lincoln U.S.'s latest letter *had* carried this burden, however, its deadline to do so expired five months ago, when it submitted its opposition. In sum, Lincoln's belated attempts not only fall short on the merits but have been waived.

## II.    Lincoln U.S.'s Proposed Alternatives Are Illusory

In its latest letter, Lincoln U.S. requests that the Court "direct Fanatics to pursue discovery through the Hague Evidence Convention," or condition relief on GDPR indemnification. ECF 71 at 3. It is unfathomable for Lincoln U.S. to suggest that Fanatics now first begin—weeks after the hearing and after substantive production was meant to be proceeding—a months-long Hague Evidence Convention process. As the record well reflects and everyone understands, Fanatics urgently needs the requested documents for depositions that are right now proceeding in earnest. And it is cold comfort for Lincoln's Italian office now to offer—as it never before did—to refrain from objecting to such requests, while knowing that the calendar will render any post-Hague production utterly hollow and useless. Nor is there any basis for Lincoln U.S. to demand GDPR indemnification, which smacks of another ruse to complicate, delay, and obstruct a straightforward, overdue production that should be proceeding without further excuses or strings.

## III.    Conclusion

Nevertheless, to facilitate a ruling with the expediency that Fanatics urgently needs, Fanatics proposes a practical solution: the Court may wish to issue a ruling now ordering production, while reserving the ability to order indemnification or reimbursement at a later time, should a legitimate GDPR challenge arise without further malfeasance or gamesmanship by Lincoln. Doing so would allow Fanatics to obtain critical discovery in time for key depositions, while protecting Lincoln U.S. in the farfetched scenario in which GDPR issues later materialize.

Fanatics respectfully requests that the Court grant its Motion and order Lincoln U.S. to produce, without further delay, responsive documents that it has the practical ability to obtain. While Fanatics does not believe it is necessary, we are of course available at the Court's convenience should the Court require a conference concerning these issues.

3

Very truly yours,


_/s/ Michael B. Carlinsky_                    _/s/ Lawrence E. Buterman_
Michael B. Carlinsky                    Lawrence E. Buterman